UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GWYNETH GILBERT and MICHAEL MARTE, on behalf of themselves and the Putative Class,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>LANDS' END, INC.,<br><br>　　　　　Defendant. | Civil Action<br><br>19-CV- 823<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, by their attorneys, Hawks Quindel S.C., Nagel Rice LLP and Cerasia & Del Rey-Cone LLP, on behalf of themselves and all others similarly situated, make the following allegations on personal knowledge and information and belief:

## I.　　NATURE OF THE ACTION

1.　　Plaintiffs Gwyneth Gilbert and Michael Marte bring this action on behalf of themselves and all similarly-situated individuals (the "Class") who are "above-the-wing" – flight attendants and customer service agents (gate agents) – and "below-the wing" – ramp agents - working for Delta Air Lines ("Delta") and who have been required to wear Passport Plum or similar red-colored uniforms (the "Uniforms") manufactured by Lands' End, Inc. and Lands' End Business Outfitters (herein collectively referred to as "Lands' End" or "Defendant").

2.　　Wearing the Uniforms has resulted in Delta employees, including the Plaintiffs, suffering from skin rashes, headaches, fatigue, breathing difficulties, hair loss, low white blood cell counts and nausea. Additionally, the Passport Plum uniforms are not colorfast and result in crocking and bleeding, staining the wearer and/or their possessions purple. The purple dye comes off on the wearer's skin and then stains the bathtub when they try to wash it off. The dyes in the fabric 'bleed' onto the wearer's clothes, sheets and towels and permanently stain their possessions.

1

3.      As Plaintiffs and the proposed Class Members at Delta are non-union, at-will employees, many are reluctant to complain about the problems with their Uniforms and suffer in silence, and Mr. Marte and some flight attendants wear undergarments or long underwear to protect themselves from new Uniforms.

4.      A total of approximately 24,000 flight attendants and approximately 40,000 gate and ramp agents are required to wear the Uniforms while working for Delta.

5.      Plaintiffs and the Class seek actual damages, injunctive relief, attorneys' fees, costs, and all other relief available to Plaintiffs and the Class.

## II.      PARTIES

6.      Plaintiff Gwyneth Gilbert is a Georgia citizen who resides in Sandy Springs, Georgia.

7.      Plaintiff Michael Marte is a Georgia citizen who resides in Newnan, Georgia.

8.      Defendant Lands' End, Inc. is a Delaware corporation with its headquarters at 1 Lands' End Way, Dodgeville, Wisconsin.

9.      At all relevant times, Lands' End was engaged in the business of manufacturing, marketing, advertising, distributing, selling, and warranting Lands' End products, including the uniforms manufactured for Delta, specifically for Delta's Flight attendants and gate agents, throughout the United States of America.

## III.      JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), as the Class contains more than 100 members, at least one of whom

2

maintains citizenship in a state diverse from Defendant, and seeks in the aggregate more than five million dollars ($5,000,000.00), exclusive of costs and interest.

11.     Lands' End is amenable to personal jurisdiction in Wisconsin, given that it is a citizen of Wisconsin, a substantial portion of the wrongdoing alleged to have occurred took place in Wisconsin, and Lands' End conducts business within Wisconsin.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Lands' End is a citizen and resident within this District and a substantial part of the events giving rise to the claims set forth herein occurred in and emanated from this District.

## IV.  FACTUAL BACKGROUND

### A.  Delta Decides to Provide New Employee Uniforms from Lands' End

13.     On its website, Lands' End describes itself as "a leading multi-channel international retailer of casual clothing, accessories . . . legendary for high-quality products at an exceptional value, plus a commitment to world-class customer service and an unconditional guarantee." Business Outfitters by Lands' End is described as a trusted brand partner providing "quality, high-value apparel and promotional products."

14.     In 2016, Delta selected Lands' End to provide new employee uniforms designed by Zac Posen of Bravo's Project Runway for its above-the-wing employees.  This line of uniforms for above-the-wing employees at Delta, which are bright purple, technically known as "Passport Plum," consist of various articles of clothing, including a v-neck signature dress, a skirt and blouse, a mock turtleneck, a vest, a sweater set and a pants suit.  Delta requires its ramp agents (*i.e.*, below-the-wing employees) to wear red shirts from Lands' End, including a red button-up polo shirt, a red and black quarter-zip polo shirt and a short-sleeve button down red and black cargo shirt (herein collectively referred to as the "Uniforms").

3

15.     The Uniforms, which are worn by approximately 24,000 flight attendants and approximately 40,000 gate and ramp agents, were designed to turn Delta employees into walking advertisements for the airline.  Delta even encouraged its flight attendants to promote the new Uniforms on their social media pages.

16.     The official launch of the new Uniforms occurred on May 29, 2018.

17.     Delta describes the Uniforms as high stretch, wrinkle- and stain-resistant, waterproof, anti-static and deodorizing.  Various chemical additives and finishes are required to ensure these characteristics.

18.     Once the Uniforms became available, flight attendants and gate agents had to go to a "fit clinic" to get measured for the new Uniforms.  Delta offered a kit consisting of certain pieces which were "purchased" with Delta "points" provided by Delta, rather than cash. If an employee wanted additional pieces, such as the sweater set, it could be purchased by the employee directly from Lands' End using the employee's own funds.

19.     Female flight attendants have several articles to choose from for a Uniform: a v-neck dress, IFS Signature dress, skirt, pants, blouse, vest or blazer. Female gate agents have a color-block dress with an accent of Cruising Cardinal or a purple pants suit, and flight attendants and gate agents get a warming sweater. Male flight attendants wear a three-piece suit in Groundspeed Graphite with a thistle pink button-up shirt with a tie, sweater, or a cardigan and mock turtleneck.

**Delta Employees Experience Adverse Health Reactions**

20.     Shortly after the Uniforms were introduced, some female flight attendants said that they started getting sick, reporting skin rashes, shortness of breath, heart palpitations and hair loss.

21.     As reported in an article in The Guardian dated April 4, 2019: "On a private Facebook group used by over 2,000 flight attendants viewed by The Guardian, hundreds of flight attendants have complained of health problems as a result of wearing the new uniforms. The health concerns over the uniforms are serious enough that some doctors have instructed Delta flight attendants to bring EpiPens to work in case they break out in rashes. *See* https://www.theguardian.com/business/2019/apr/03/delta-flight-attendants-uniforms-rash-claims

22.      One flight attendant interviewed by The Guardian stated: "I noticed right away after I put the uniforms on that I had shortness of breath and I have been a runner my whole life . . . I don't smoke or anything like that, so when I couldn't get up the stairs without being extremely winded, I know there was some sort of problem." *Id.*

23.     Another flight attendant said she noticed huge rashes all over her body that made it impossible for her to sleep. The rash looked alike chemical burns and took weeks for it to go away. She had to take antibiotic because a patch of the rash got infected. *Id.*

24.     According to the Guardian article, many doctors believe that formaldehyde and Teflon chemical finishing put on the uniforms to make them stain resistant and durable are likely the culprit.

25.     In March 2019, Delta informed some flight attendants that if they did not want to wear the new Uniforms, they would need to request a disability job accommodation with the option of going on short-term disability leave. Under short-term disability leave, they would only make two-thirds of their pay and would have to either return to their jobs or quit after a year.

26.     Because Delta flight attendants are non-union, many flight attendants are afraid to complain about the adverse health consequences they are experiencing from the new Uniforms. As of August 30, 2019, Delta announced that only "1,900" employees have complained about adverse health reactions associated with the Uniforms.

27.     It has been reported that the National Institute of Occupational Safety and Health (NIOSH), which is part of the Center for Disease Control (CDC), is expected start an official inquiry into the Passport Plum Uniforms in the near future.

28.     On August 30, 2019, Delta announced to its employees that it "has hired an independent toxicologist to perform comprehensive testing on the new above-wing [Purple Plum] uniform testing as part of [its] efforts to ensure the safety of [its] employees."  Delta further reported that this study and testing is an "additional $3.5 million [] investment," along with "the routine tests Lands' End continuously performs and detailed testing prior to any wear test."

**Plaintiffs' Experiences**

**Gwyneth Gilbert**

29.  Plaintiff Gwyneth Gilbert is a Delta flight attendant who has experienced rashes and skin irritations from wearing the Uniforms.  Ms. Gilbert's kit included two dresses and a pant suit. Additionally, she purchased a sweater set directly from Lands' End.

30.  As early as June or July 2018, Ms. Gilbert found that wearing the mock turtleneck caused a rash on her skin. Then, in September and through the fall of 2018, she wore the pants and blouse part of the Uniform and she broke out in a rash.

31.  The rash which caused irritation on the back of Ms. Gilbert's neck, the collarbone area and chest was red and painful to the touch. She experienced a burning sensation, which made it difficult for her to complete her normal job duties due to the pain.

32.   Ms. Gilbert contacted Lands' End about these symptoms and Lands' End promised to send her a "custom" replacement shirt, which was allegedly "untreated." The replacement shirt was worse, making her skin feel as though she had experienced a burn.

33.   A photo of Ms. Gilbert's rash appears below:



34.   In late fall to December 2018, Ms. Gilbert wore the Passport Plum dress, resulting in sore throats, headaches, body aches and fatigue. She had these symptoms each time she worked a flight wearing the Uniform.

35.   In January 2019, Ms. Gilbert contacted Delta's Uniform Committee, which advised her to file an on-the-job injury report (*i.e.*, workers' compensation claim), which she filed in January 2019.

36.   On February 25, 2019, Ms. Gilbert was sent to a dermatology center in Atlanta for "patch" testing by Sedgwick, the worker's compensation administrator, and she had to stay out of work for the whole week. She became sick after the patch test,  developing a sore throat, headache and body aches, which lasted almost two weeks.  A copy of a photo of Ms. Gilbert while the patch test was being administered is set forth below.



37.   On March 1, 2019, the dermatologist who conducted the patch test on Ms. Gilbert using her Uniform concluded that she is highly allergic to the "disperse dyes" and Formaldehyde in the Uniform. The dermatologist recommended that her uniform be changed.

38.  Ms. Gilbert was placed on short-term disability leave by Delta from March 5 through April 2, 2019. While on short-term disability leave, she was required to use her "certified time" in order to receive her pay.

39.  Ms. Gilbert returned to work on April 3, 2019 and is now allowed to wear a black pants suit and white blouse, rather than the Passport Plum Uniform. Since then, she has experienced no physical symptoms.

**<u>Michael Marte</u>**

40.  Plaintiff Michael Marte is employed by Delta as a ramp agent in Atlanta, Georgia.  He has been employed by Delta for over 21 years.

41.  Mr. Marte has experienced significant rashes, skin irritation and permanent scaring on his face, head, arms, torso and back from wearing the red-colored Uniforms.

42.  Photos of Mr. Marte's skin rashes, irritation and scaring appear below:







43.    In August 2018, Mr. Marte started seeking treatment from dermatologists for his symptoms.  He has continually received treatment from a dermatologist to date.

44.    Mr. Marte's dermatologist conducted a patch test on him.  The results of the patch test, which were issued in September 2019, show that Mr. Marte is allergic to certain allergens associated with the red-color Uniforms that he is required to wear as a Delta employee.  In particular, the testing results indicate that he has a "contact allergy to Dimethylol dihydroxy ethylene urea," which is a type of textile resin.  Mr. Marte's dermatologist has recommended that he wear an alternative uniform in order to continue his employment at Delta.

44. Mr. Marte has communicated with Delta and Lands' End about his skin conditions resulting from the red-colored Uniforms.  Delta originally contact Mr. Marte's wife after seeing a post she made on the Facebook page of a group of Delta flight attendants who communicate about the adverse health issues associated with their Uniforms.  Delta originally informed Mr. Marte that he did not have to wear the Uniforms, but then required him to do so again after about two weeks.  Lands' End sent him three new sets of red-colored Uniforms, but he has continued to have adverse skin reactions to those new Uniforms, too.  Mr. Marte also has worn a white undershirt under his red-colored Uniform shirts, but that has not helped him or alleviated his skin conditions.

## V. **CLASS ACTION ALLEGATIONS**

45.    Plaintiffs brings this action on behalf of themselves and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All flight attendants, gate agents and ramp agents employed by Delta in the United States who were required to wear Passport Plum and red-colored uniforms manufactured by Defendant.

**Excluded from the Class**

Excluded from the Class are: (a) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) any employee of Delta who resides in the State of the New York and is included with the definition of the class in the case of *Monica DeCresentis, et al. v. Lands' End, Inc.*, U.S.D.C., S.D.N.Y., 19-CV-4717 (LGS).

46.     **Numerosity/Impracticability of Joinder/Ascertainability:**

The members of the Class are so numerous that joinder of all members would be impracticable. The Class is believed to include approximately 64,000 members. The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that work or have worked for Delta and were or are required to wear the Uniforms.  Lands' End has the contact information for each class member, who were or are required to select among the several items manufactured by Defendant. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control.

47.     **Commonality and Predominance:** There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

   a.   Whether the Uniforms caused serious adverse health reactions to Class Members;

   b.   Whether the Uniforms bleed and crock resulting in purple or red coloring leaching into Class Members skin, staining their clothing and other possessions, resulting in permanent damage to their possessions that come in contact with the Uniforms.

   c.   Whether the conduct of Lands' End violates warranty laws, and other laws as asserted herein;

   d.   Whether the conduct of Lands' End was negligent;

    e.   Whether Lands' End should be strictly liable for producing dangerous uniforms;

    f.   Whether Class Members are entitled to monetary and equitable relief from Lands' End.

48.    **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the other members of the Class have suffered similar injury by the same wrongful practices by Lands' End. The claims of Plaintiffs and the other members of the Class all arise from the same wrongful practices and course of conduct, and are based on the same legal and remedial theories.

49.    **Adequacy Of Representation**: Plaintiffs will fully and adequately assert and protect the interests of the members of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the members of the Class.

50.    **Superiority Of Class Action And Impracticability Of Individual Actions**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the members of the Class are in the millions of dollars, and are no less than $5,000,000, upon information and belief, the individual damages incurred by each member of the Class resulting from Lands' End's wrongful course of conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions,

and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Lands' End has acted or refused to act on grounds generally applicable to the members of the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## VI. <u>CLAIMS FOR RELIEF</u>

### <u>FIRST COUNT</u>
**(NEGLIGENCE)**

51. Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

52. This claim is brought on behalf of Plaintiffs and the Class.

53. Defendant owes a duty to individuals, including Plaintiffs and the Class, to use reasonable care in designing, manufacturing, marketing, labeling and selling the Uniforms.

54. Defendant was negligent in failing to use reasonable care in designing, manufacturing, marketing, labeling and selling the Uniforms. Defendant breached their aforementioned duty by:

   a. Failing to design the Uniforms so as to avoid an unreasonable risk of harm to Delta flight attendants, gate agents and ramp agents bringing the Uniforms into their homes and wearing the Uniforms, including the Plaintiffs;

   b. Failing to use reasonable care in the testing of the Uniforms so as to avoid unreasonable risk of harm to Delta flight attendants, gate agents and ramp agents bringing the Uniforms into their homes and wearing the Uniforms, including the Plaintiffs;

14

c. Failing to use reasonable care in inspecting the Uniforms so as to avoid an unreasonable risk of harm to Delta flight attendants, gate agents and ramp agents bringing the Uniforms into their homes and wearing the Uniforms, including the Plaintiffs;

d. Failing to use reasonable care in collecting and/or analyzing adverse event reports by Delta flight attendants, gate agents and ramp agents reporting issues with the Uniforms;

e. Otherwise negligently or carelessly designing, manufacturing, marketing and selling the Uniforms.

55.  As a direct and proximate result of Lands' End's negligence, Plaintiffs and the Class have suffered and/or in the future will suffer personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including but not limited to, medical services and expenses, lost income and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for compensatory and injunctive relief, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems proper.

<u>**SECOND COUNT**</u>
**(DESIGN DEFECT)**

56.  Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

57. This claim is brought on behalf of Plaintiffs and the Class.

58. At all times material to this action, Defendant was responsible for designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing and selling the Uniforms.

59. The Uniforms are defective and unreasonably dangerous to Plaintiffs and the members of the Class.

60. The Uniforms are defective in their design or formulation in that it they are not reasonably fit, suitable, or safe their intended purpose and/or its foreseeable risks exceed the benefits associated with their design and formulation.

61. At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendant, directly and indirectly, advertised, marketed, and promoted them at the time Defendant designed, manufactured, distributed, and sold the Uniforms and placed the Uniforms in the stream of commerce.

62. The Uniforms were defective and unreasonably dangerous when they left control of Defendant in one or more of the following manners:

a. The risk associated with wearing the Uniforms far outweighed the utility derived from wearing them;

b. Defendant failed to provide adequate warnings regarding the hazards associated with wearing the Uniforms;

c. Defendant's Uniforms were defectively designed and unreasonably dangerous in design and composition in that other products could achieve similar results without the risks presented by the Uniforms;

d. The Uniforms failed to comply with the implied warranty that the product was safe when used for its intended purpose.

63. At the time the Uniforms left the control of Defendant, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk to the Plaintiffs' and the Class members of injuries without impairing the reasonably anticipated or

intended function of the Uniforms.  These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of injuries to Plaintiffs and the Class Members without substantially impairing the Uniforms' utility.

64.   As a direct and proximate result of the Uniforms' defective design, the Plaintiffs and Class Members suffered severe adverse health reactions and physical injuries, as well as damage to personal property in the form of clothing and furniture permanently stained purple.

65.   As a direct and proximate consequence of Lands' End's defectively designed Uniforms, Plaintiffs and the Class Members sustained personal injuries and related losses as detailed more fully herein.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for compensatory damages and injunctive relief, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems proper.

**THIRD COUNT**
**(MANUFACTURING DEFECT)**

66.   Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

67.   This claim is brought on behalf of Plaintiffs and the Class.

68.   The Uniforms manufactured by Lands' End, which Plaintiffs and the Members of the Class were required to wear during working hours, were not reasonably safe for their intended use and were defective as a matter of law with respect to their manufacture.

69.   As a direct and proximate result of the Uniforms' aforementioned defects, Plaintiffs and the members of the Class were caused to suffer and /or in the future will be caused to suffer adverse health consequences, pain and suffering, emotional distress, financial or economic loss,

including but not limited to, obligations for medical services and expenses, lost income and other damages.

70.  Defendant is strictly liable to Plaintiffs and the members of the class for designing, manufacturing, marketing, labeling, packaging and selling defective Uniforms.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for compensatory damages and injunctive relief, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems proper.

## FOURTH COUNT
## (FAILURE TO WARN)

71.  Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

72.  This claim is brought on behalf of Plaintiffs and the Class.

73.  The Uniforms manufactured by Lands' End to be worn by Plaintiffs and all Delta flight attendants, gate agents and ramp agents were not reasonably safe for their intended use and were defective as a matter of law due to their lack of appropriate and necessary warnings.

74.  Defendant had a duty to warn Plaintiffs and the members of the Class of the risks and/or defects about which it knew or should have known.

75.  Defendant failed to adequately warn Plaintiffs and the members of the Class that the Uniforms were unreasonably dangerous and defective because they could result in severe adverse health effects, including, but not limited to, rashes and skin irritations, hair loss, headache and fatigue, and nausea.

76.  At all times relevant hereto, Defendant intended the Delta flight attendant, gate agents and ramp agents, including Plaintiffs, to wear the Uniforms and knew or should have known that the Uniforms were defective and dangerous.

77. The Uniforms were used/worn by Plaintiffs and the Class members in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended.

78. At all relevant times hereto, Defendant was situated in the chain of commerce and transferred, sold, marketed, advertised, or distributed the Uniforms in the regular course of business.

79. At all times relevant hereto, the Uniforms were in the same or substantially the same, defective and unreasonably dangerous condition when put to its reasonably anticipated and foreseeable use.

80. Defendant knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to users/wearers of the product, failed to immediately recall the Uniforms and continued to sell the Uniforms to be worn by Delta flight attendants, gate agents and ramp agents. As a direct result, the Uniforms manufactured and/or supplied by Defendant were defective due to inadequate post marketing warnings or instructions.

81. Had Defendant adequately warned Plaintiffs and the Class Members they would have been alerted to the problem and would have taken steps to avoid the adverse health consequences before they occurred.

82. As a direct and proximate consequence of Defendant's defectively designed product, Plaintiffs and the members of the Class sustained serious personal injuries and injuries to property and losses as detailed more fully herein.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for compensatory damages and injunctive relief, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems proper.

## FIFTH COUNT
## (BREACH OF EXPRESS WARRANTY)

83. Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

84. This claim is brought on behalf of Plaintiffs and the Class.

85. Defendant made assurances to Delta and Delta's employees that the Uniforms would be safe and comfortable and reasonably fit for their intended purpose.

86. Plaintiffs and the Class are the intended third party beneficiaries of Lands' End's warranties because there is a valid and binding contract between Delta and Lands' End, the contract was intended for the benefit of Delta's flight attendants, gate agents and ramp agents who would be required to wear the Uniforms, and the benefit to the flight attendants, gate agents and ramp agents is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Delta employees if the benefit of the warranty is lost. Consequently, Plaintiffs and the Class Members are in privity with Defendant.

87. Accordingly, Lands' End made express warranties under state law.

88. Plaintiffs and the Class reasonably relied upon Lands' End's express warranties and guarantees that the Uniforms were safe, merchantable, and reasonably fit for their intended purpose.

89. Defendant breached their express warranties by selling to Delta and the Plaintiffs and the Class unreasonably dangerous and defective Uniforms jeopardizing the health and safety of Plaintiffs and the Class Members and resulting in the permanent staining of their clothes and other products.

90. Plaintiffs notified Lands' End of the breach. Lands' End was on notice of the breach of warranty well before Plaintiffs began this litigation.

91.   As a direct and proximate result of Lands' End's breach of its express warranties, Plaintiffs and the Class Members have suffered personal injuries, pain and suffering, damage to property, emotional distress, financial and economic loss, including obligations for medical services and expenses, lost income, and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for compensatory damages and injunctive relief, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems proper.

### SIXTH COUNT
### (BREACH OF IMPLIED WARRANTY)

92.   Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

93.   This claim is brought on behalf of Plaintiffs and the Class.

94.   Plaintiffs and the Class are the intended third party beneficiaries of Lands' End's warranties because there is a valid and binding contract between Delta and Lands' End, the contract was intended for the benefit of Delta's flight attendants, gate agents and ramp who would be required to wear the Uniforms, and the benefit to the flight attendants, gate agents and ramp agents is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Delta employees if the benefit of the warranty is lost. Consequently, Plaintiffs and the Class Members are in privity with Defendant.

95.   The Lands' End Uniforms are "goods" under the Uniform Commercial Code ("UCC").

96.   Lands' End is a "merchant" under the UCC.

97.     Lands' End made numerous implied warranties to Delta and Plaintiffs and the members of the Class about the merchantable quality of the Uniforms and that they were fit for the ordinary purpose for which Uniforms are intended.

98.     Plaintiffs and the Class relied upon Lands' Ends' implied warranties of merchantability in wearing and purchasing the Uniforms.

99.     Defendant breached the implied warranties of merchantability because the Uniforms were neither merchantable nor suited for their intended use as warranted.

100.    Defendant breached the implied warranties by selling to Delta and the Plaintiffs and the Class unreasonably dangerous and defective Uniforms jeopardizing the health and safety of Plaintiffs and the class and resulting in the permanent staining of their clothes and other products.

101.    As a direct and proximate result of Lands' End's breach of its implied warranties Plaintiffs and the Class have suffered personal injuries, pain and suffering, damage to property, emotional distress, financial and economic loss, including obligations for medical services and expenses, lost income, and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for compensatory damages and injunctive relief, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems proper.

### SEVENTH COUNT
### (VIOLATIONS OF THE MAGNUSON-MOSS
### WARRANTY ACT, 15 U.S.C. § 2301 *et. seq.*)

102.    Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

103.    This claim is brought on behalf of Plaintiffs and the Class.

104.     Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

105.     Lands' End is a "supplier[]" and "warrantor[]" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

106.     The Lands' End Uniforms are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

107.      Defendant's written affirmations of fact, promises, and descriptions as alleged created a "written warranty" as to the Uniforms.  There was an implied warranty for the sale of such product within the meaning of the MMWA.  Such warranties were further described in the express and implied warranty counts above.

108.     As detailed herein, Defendant breached these express and implied warranties, as the Uniforms were not fit for their intended use, were not defect free, and were harmful to Plaintiffs and the Class Members.

109.     The defects existed when the Uniforms left the Defendant's control.

110.     Despite reasonable opportunity to honor its disclosure and remedy obligations, Lands' End violated these obligations under the Magnuson-Moss Act, causing injury to the Plaintiffs and the Class.

111.     The amount in controversy with respect to the Class Plaintiff' individual claims meets or exceeds the sum or value of $25.  There are more than 100 individuals in the Class.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

112.     As a direct and proximate result of Lands' End's breach of warranty, Plaintiffs and the members of the Class sustained damages and other losses in an amount to be determined at trial.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for compensatory damages, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems proper.

## VII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs on behalf of themselves and on behalf of the members of the Class, pray for judgment against Lands' End granting the following relief:

1.     Certification of the proposed Class, and appointing Plaintiffs to represent the Class and Plaintiffs' co-counsel as co-lead class counsel;

2.     All recoverable compensatory, statutory and other damages sustained by Plaintiffs and the other members of the Class;

3.     Injunctive and declaratory relief;

4.     Statutory pre-judgment and post-judgment interest on the damages;

5.     Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

6.     Such other relief as the Court may deem just and proper.

## VIII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: October 3, 2019

HAWKS QUINDEL S.C.

By _/s/ David Zoeller____
    David C. Zoeller (Bar No. 1052017)
    Nicholas E. Fairweather (Bar No. 1036681)
    Caitlin M. Madden (Bar No. 1089238)
409 E. Main Street
Madison, Wisconsin 53701
608.257.0040
dzoeller@hq-law.com
nfairweather@hq-law.com
cmadden@hq-law.com

        -and-

NAGEL RICE, LLP

By _/s/ Bruce H. Nagel_____
    Bruce H. Nagel
    (To Be Admitted *Pro Hac Vice*)
    Randee M. Matloff
    (To Be Admitted *Pro Hac Vice*)
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com
rmatloff@nagelrice.com

        -and-

CERASIA & DEL REY-CONE LLP

By __/s/ Edward Cerasia II____
    Edward Cerasia II
    (To Be Admitted *Pro Hac Vice*)
150 Broadway, Suite 1517
New York, New York 10038
646-525-4231
ed@cdemploymentlaw.com

*Attorneys for Plaintiffs and the Putative Class*