IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GWYNETH GILBERT and MICHAEL
MARTE, individually and on behalf of all
others similarly situated,

                Plaintiffs,

v.

LANDS' END, INC.,

                Defendant.

OPINION and ORDER
19-cv-823-jdp

---

STEPHANIE ANDREWS, et al., individually
and on behalf of all others similarly situated,

                Plaintiffs,

v.

LANDS' END, INC. and LANDS' END
OUTFITTERS, INC.,

                Defendants.

OPINION and ORDER
19-cv-1066-jdp

---

In these consolidated proposed class actions, employees of Delta Air Lines complain that they were injured by chemicals and dyes in their work uniforms, which were made by Wisconsin-based clothing manufacturer Lands' End, Inc. Lands' End has filed a motion to strike the class allegations in the *Gilbert* complaint, contending that the plaintiffs' proposed class is overbroad and that individual issues predominate over common ones. Dkt. 13.

The court will deny the motion. Plaintiffs may face a formidable challenge at class certification, but at this stage in the case, before plaintiffs have had an opportunity to conduct discovery, the court cannot rule out that plaintiffs will identify common issues susceptible to class-wide resolution.

BACKGROUND

As alleged in the Complaint, in 2018, Delta launched a new line of uniforms, manufactured by Lands' End, to be worn by its approximately 24,000 flight attendants and 40,000 gate and ramp agents. Dkt. 1, ¶¶ 15, 16. Those uniforms were billed as "high stretch, wrinkle- and stain-resistant, waterproof, anti-static and deodorizing"—characteristics attained by applying "[v]arious chemical additives and finishes." *Id.* ¶ 17. Plaintiffs allege that the uniforms triggered a variety of adverse health reactions, including rashes, headaches, fatigue, breathing difficulties, hair loss, low white blood cell count, nausea, heart palpitations, body aches, sore throats, and scarring. *Id.* ¶¶ 2, 20–23, 34, 41. They also say that the uniforms were not colorfast; specifically, the "passport plum" uniforms would crock and bleed, staining wearers and their possessions purple. *Id.* ¶ 2.

Plaintiffs brought this proposed class action asserting claims for negligence, design defect, manufacturing defect, failure to warn, breach of express and implied warranty, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq. Id.* ¶¶ 51–112. They seek monetary, injunctive, and declaratory relief for a class consisting of "[a]ll flight attendants, gate agents and ramp agents employed by Delta in the United States who were required to wear Passport Plum and red-colored uniforms manufactured by Defendant," excluding (1) individuals associated with Lands' End; (2) the assigned judge and his immediate family; and (3) any Delta employees who reside in New York and are included within the class definition of a parallel, New York-based class action, *DeCrescentis v. Lands' End, Inc.*, No. 19-cv-4717 (LGS) (S.D.N.Y. filed May 22, 2019). *Id.* ¶ 45. Plaintiffs do not currently propose any subclasses.

ANALYSIS

Shortly after plaintiffs filed their complaint, Lands' End moved to strike the class allegations, essentially asking this court to preemptively reject the proposed class as impossible to certify under Federal Rule of Civil Procedure 23. Dkt. 13. Although typically the propriety of class treatment is taken up when plaintiffs move for class certification, the parties need not necessarily wait until then. *See Bruzek v. Husky Energy, Inc.*, No. 18-CV-697-WMC, 2019 WL 4855072, at *6–7 (W.D. Wis. Sept. 30, 2019); *Blihovde v. St. Croix County*, 219 F.R.D. 607, 612 (W.D. Wis. 2003). Rule 23(c)(1)(A) instructs that class certification should be determined at the "earliest practicable time." Ordinarily, a class certification determination won't be practicable until after discovery has taken place; defendants are often in control of the information plaintiffs will need to demonstrate that they meet the requirements of Rule 23. *Guzman v. N. Illinois Gas Co.*, No. 09 C 1358, 2009 WL 3762202, at *2 (N.D. Ill. Nov. 6, 2009). But "sometimes the complaint will make it clear that class certification is inappropriate." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013). A court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

In evaluating motions to strike class allegations, courts employ a standard similar to that applicable to motions under Rule 12(b)(6). *Bruzek*, 2019 WL 4855072, at *7 (collecting cases). Under that standard, the plaintiffs must "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In the context of a determination under Rule 23, the question is whether plaintiffs' allegations are sufficient to show that it is plausible that plaintiffs will be able to

3

satisfy the Rule 23 requirements after conducting discovery." *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 169 (W.D. Wis. 2013).

Here, Lands' End says that the class plaintiffs propose cannot be certified for two reasons: (1) it includes Delta employees who have suffered no injury and thus have no standing to sue; and (2) individual issues predominate over common ones, precluding class certification under Rule 23(b)(3). Lands' End has identified significant hurdles for plaintiffs to overcome before the court would be able to certify a class. But prior to discovery, Lands' End's motion is premature. Plaintiffs have plausibly alleged facts that would support class certification, which is all they have to do at this stage.

**A. Inclusion of individuals without standing in the proposed class**

Lands' End contends that plaintiffs' proposed class is fatally overbroad because "the vast majority of Delta employees required to wear the uniforms have no actual or alleged injury and no standing to sue." Dkt. 14, at 13. Generally, "[p]laintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Morrison v. YTB Inter., Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

In the context of a proposed class action, the absent members of the proposed class do not need to have standing; only the named plaintiffs must show that. *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). In this case, each of the named plaintiffs allege that they suffered some, but not all, of the injuries alleged in the complaint. For example, none of the named plaintiffs in either case allege that they have experienced crocking and bleeding with the passport plum uniforms. If no named class representative has standing to bring the claims related to crocking and bleeding, that claim must be dismissed. *See Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] person cannot predicate standing on

4

injury which he does not share. Standing cannot be acquired through the back door of a class action." (citation omitted)). The court will give plaintiffs a short deadline by which to either amend their complaint to name a class representative for the crocking and bleeding claim or voluntarily dismiss that claim.

Setting that problem aside, Lands' End is arguing overbreadth, not standing: that the class that plaintiffs propose to represent contains too many uninjured class members. If a class definition "is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad" and should not be certified. *Kohen*, 571 F.3d at 677. As evidence of the overbreadth of plaintiffs' proposed class, Lands' End points to various allegations in the complaint that quantify the number of Delta employees who have complained about those effects. *See, e.g.*, Dkt. 1, ¶ 20 ("some female flight attendants" reported illness), ¶ 21 ("hundreds of flight attendants" complained about illness on a private Facebook page with several thousand members), ¶ 25 ("some flight attendants" were told they could request disability job accommodation); ¶ 26 (alleging "1,900" employees have complained to Delta about the uniforms). Lands' Ends says that these allegations are tantamount to "admissions that the vast majority of the putative class is uninjured." Dkt. 14, at 13.

There are three problems with Lands' End's argument. First, the nature and extent of the injuries suffered by the proposed class will become clear only through the course of discovery. Just because only a handful of Delta employees have complained doesn't mean that only a handful have been injured. Of course, the proposed class likely encompasses some unknown proportion of uninjured employees; the inclusion of such persons at this stage is "almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." *Kohen*,

571 F.3d at 677. Lands' End cites no authority to support its contention that class allegations should be struck before the extent of the injuries has been ascertained through discovery.

Second, plaintiffs were under no obligation to plead a proposed class definition in their complaint in the first place. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("A complaint must contain three things: a statement of subject matter jurisdiction, a claim for relief, and a demand for a remedy. Class definitions are not on that list."). So even if the proposed class definition in the complaint is overbroad, that doesn't provide grounds at this stage to deny class certification. There will be an opportunity to refine the class or propose subclasses at the class certification stage.

Third and most important, even granting Lands' End's assumption that only a small proportion of Delta employees have been injured, that would not preclude class certification. If it turns out that "very few members of the class were harmed, that is an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate [Lands' End]." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014) (citation and quotation marks omitted). It's true that if "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Messner*, 669 F.3d at 824. "But there is a distinction between members who *were not* harmed and those who *could not* have been harmed." *Suchanek*, 764 F.3d at 758 (emphasis in original). In this case, plaintiffs propose a class of all employees required to wear the red and passport plum Lands' End uniforms, which means that they could have been harmed by those uniforms. This is not a case in which plaintiffs have proposed a class consisting of people who could not

6

have been injured. So the court will deny Lands' End's motion to strike the class allegations based on their purported overbreadth.

## B. Predominance of individual issues over common ones

A class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b). Here, plaintiffs plead two types of Rule 23(b) classes: a Rule 23(b)(2) class (appropriate in cases where a defendant's act or refusal to act applies generally to a class, making plaintiffs' injuries susceptible to class-wide injunctive or declaratory relief) and a Rule 23(b)(3) class (appropriate in cases where questions of law and fact common to members of the class predominate over questions affecting only individual member of the class). *See* Dkt. 1, ¶ 45. In its motion to strike, Lands' End attacks plaintiffs' ability to make the requisite showing of predominance under Rule 23(b)(3). It does not mention plaintiffs' asserted Rule 23(b)(2) class until its reply brief, *see* Dkt. 24, 12–13, so any challenge to that aspect of plaintiffs' case is waived. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019) ("arguments raised for the first time in a reply brief are waived").

Lands' End contends that individual issues of fact and law predominate over common ones, hopelessly complicating and expanding the injury, causation, and liability determinations and making class treatment under Rule 23(b)(3) impossible. It points to three sources of variation among the proposed class members: (1) variation in the uniform pieces that employees wear; (2) variations in employees' patterns of conduct and working environments; and (3) employees' personal characteristics and the varying nature and extent of their alleged injuries.

### 1. Variation in the uniforms

Lands' End notes that its uniform line consists of numerous products, which "differ meaningfully in chemical treatments, fabrics, dye, style, skin contact, intended use, and more."[1] Dkt. 14, at 17. The specific products an employee wears depends on a variety of factors—type of job, climate, gender, and personal selection. In light of these variations, Lands' End says, "establishing causation would necessarily begin with an individualized catalogue of each item 64,000 employees have owned and worn since May 2018," which would make the causation analysis "impossibly complicated." Dkt. 14, at 17.

This argument is premature. As plaintiffs point out, *see* Dkt. 21, at 8, discovery may show that the uniform pieces have been treated with common chemicals or additives that render individual differences between them irrelevant. Alternatively, if discovery reveals material differences that make class-wide treatment untenable, it does not necessarily follow that the court must deny class certification. Depending on how the facts develop, subclasses may be appropriate. *See* Fed. R. Civ. P. 23(c)(5).

### 2. Variations in employees' patterns of conduct and working environments

Lands' End contends that there is considerable variation in the patterns of conduct and working environment of individual employees. Employees may choose to wear their uniforms in different ways, resulting in differing levels of uniform-to-skin contact. Plaintiff Marte, for instance, alleges that he began wearing a white undershirt under his uniform at one point in an unsuccessful effort to alleviate his uniform-induced skin conditions. Dkt. 1, ¶ 44. The way that

---

[1] Some of the details highlighted by Lands' End, such as the fact that different uniform pieces are subject to different chemical treatments, are drawn from outside the complaint and aren't properly raised in a motion to strike. *See DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 1:13-CV-1570-SEB, 2015 WL 1505675, at *1 (S.D. Ind. Mar. 31, 2015) (collecting cases).

employees care for and handle their uniforms also varies widely. And employees work in a range of environments, where they are exposed to different pollutants and toxins that could complicate the causation analysis.

It is not yet clear whether any of these variations matter. Marte's decision to wear an undershirt didn't resolve his uniform-related injuries, after all. But even assuming that differing individual practices and work environments have some causal impact on employees' injuries, that is not necessarily a bar to class certification. *See Suchanek*, 764 F.3d at 759 (district court made "error of law" by assuming that "individual issues necessarily predominate in cases requiring individual subjective inquiries into causality"); *Paella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("Proximate cause . . . is necessarily an individual issue and the need for individual proof alone does not necessarily preclude class certification."). The court will not strike plaintiffs' class allegations simply because Lands' End assumes that confounding behavioral and environmental variables will impossibly complicate the causation inquiry.

### 3. Variation in employees' personal characteristics and alleged injuries

Lands' End's final argument is that the extensive variation in the employees' alleged physical ailments, coupled with their inherently individualized treatment choices, medical histories, preexisting conditions, and potential alternative causes, preclude class certification. The uniform-induced physical ailments alleged in the complaint run the gamut from skin rashes to heart palpitations, and some of the symptoms are quite common (sore throats, headaches, nausea) or subjective in nature (fatigue, body aches). Those ailments vary in severity, and employees—including the named plaintiffs—sought various treatments and mitigated their damages in individualized ways. And plaintiffs acknowledge that they have different sensitivities: they allege that Gilbert "is highly allergic to the 'disperse dyes' and Formaldehyde

in the Uniform," whereas Marte "has a 'contact allergy to Dimethylol dihydroxy ethylene urea,'" which is a type of textile resin." Dkt. 1, ¶¶ 37, 44. Given the quantity and significance of these individualized questions, Lands' End argues, any overarching dispute about the health consequences of the Delta uniform cannot possibly satisfy the Rule 23(b)(3) predominance standard.

Lands' End makes a good point. "Medical causation and personal injury allegations raise a significant hurdle that makes class treatment questionable," and to date "no federal appellate court has approved a nationwide personal injury, product liability or medical monitoring class." *DuRocher*, 2015 WL 1505675, at *10; *see also id.* at *4 n.3 (collecting cases in which federal courts have rejected nationwide or multi-state class actions for personal injury and product liability claims). These types of claims and alleged injuries pose challenges for class treatment because they are "likely to present 'significant questions, not only of damages but of liability and defenses of liability affecting the [individual class members] in different ways." *Alchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citations, quotation marks, and internal alteration omitted) (affirming the rejection of a "sprawling" nationwide class of personal injury product liability claims and advising "caution" when considering class certification of mass torts).

Plaintiffs will likely face an uphill battle at class certification. Still, the court concludes that it would be premature to strike the class allegations before plaintiffs have had an opportunity to develop the factual record and crystallize those common questions susceptible to common answers. Discovery may narrow the ailments causally connected with Lands' End uniforms to a more discrete and ascertainable list. Difficulties in measuring damages might be avoided by limiting certification to determining liability or even more discrete issues. *See Butler*

10

*v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogenous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."); Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). Certain of plaintiffs' claims, such as warranty-related claims, likely will not implicate knotty medical causation issues to the same extent (although they may not be susceptible for class-wide resolution for other reasons). In short, this is not a case in which the "pleadings make clear that the suit cannot satisfy Rule 23" such that striking the class allegations would be justified. *Hill*, 946 F. Supp. 2d at 830. The court will deny Lands' End's motion.

ORDER

IT IS ORDERED that:

1. Defendant Lands' End's motion to strike the class allegations, Dkt. 13, is DENIED.

2. Plaintiffs may have until May 4, 2020, to either amend their complaint to name a class representative for the crocking and bleeding claim. If plaintiffs fail to respond by then, the court will dismiss that claim for lack of standing.

Entered April 20, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge