# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GWYNETH GILBERT and MICHAEL MARTE, on behalf of themselves and the Putative Class, | Civil Action No. 3:19-cv-00823-jdp |
| Plaintiffs, | |
| v. | |
| LANDS' END, INC., | |
| Defendant. | |

| | |
|---|---|
| STEPHANIE ANDREWS, et al on behalf of themselves and all others similarly situated, | Civil Action No. 3:19-cv-01066-jdp |
| Plaintiffs, | |
| v. | |
| LANDS' END, INC. and LANDS' END OUTFITTERS, INC. | |
| Defendants. | |

## DEFENDANT LANDS' END, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS

## <u>TABLE OF CONTENTS</u>

**Page**

I.      Introduction ............................................................................................................... 1

II.     Procedural Background ............................................................................................. 2

III.    Argument .................................................................................................................. 6

        A.      The Court Should Exclude the Unproduced Laboratory Analyses ......................... 6

        B.      The Court Should Exclude Plaintiffs' Expert Report at the Class
                Certification Stage ....................................................................... 10

        C.      In the Alternative, the Court Should Grant Lands' Ends More Time to
                Oppose Plaintiffs' Motion for Class Certification ................................................. 11

IV.     Conclusion ................................................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Bluestein v. Central Wisconsin Anesthesiology, S.C.*,
296 F.R.D. 597 (W.D. Wis. 2013) ............................................................................10

*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir. 2003) ...................................................................................10

*Donnelly v. NCO Fin. Sys., Inc.*,
263 F.R.D. 500 (N.D. Ill. 2009)..................................................................................7

*e360 Insight, Inc. v. Spamhaus Project*,
658 F.3d 637 (7th Cir. 2011) ...................................................................................12

*Engel v. Town of Roseland*,
No. 06-cv-430, 2007 WL 2903196 (N.D. Ind. Oct. 1, 2007) ....................................7

*Hickman v. Taylor*,
329 U.S. 495 (1947)....................................................................................................9

*Johnson v. Kakvand*,
192 F.3d 656 (7th Cir. 1999) ...................................................................................12

*Karum Holdings LLC v. Lowe's Companies, Inc.*,
895 F.3d 944 (7th Cir. 2018) .....................................................................................9

*Lor v. Kelley*,
436 F. App'x 634 (7th Cir. 2011) .............................................................................11

*Meyers v. National R.R. Passenger Corp.*,
618 F.3d 729 (7th Cir. 2010) ...................................................................................11

*Morris v. BNSF Ry. Co.*,
969 F.3d 753 (7th Cir. 2020) ...............................................................................9, 10

*Musser v. Gentiva Health Servs.*,
356 F.3d 751 (7th Cir. 2004) .....................................................................................9

*Salgado by Salgado v. Gen. Motors Corp.*,
150 F.3d 735 (7th Cir. 1998) ...................................................................................10

*Zirk v. Nationstar Mortgage*,
No. 16-cv-448-jdp, 2017 WL 3402970 (W.D. Wis. Aug. 8, 2017).........................10

iii

**RULES**

Fed. R. Civ. P.

26 ..................................................................................................................8
26(a)(1)(A)(ii) ............................................................................................6, 8
26(a)(2)(B)(ii) ...............................................................................................10
26(e)(1) ...........................................................................................................7
26(g)(3) ...........................................................................................................9
34 ............................................................................................................3, 6, 7
37 ..................................................................................................................12
37(b)(2)(A)(i)-(vi) .........................................................................................10
37(c)(1) .....................................................................................................9, 11
37(c)(1)(A) ....................................................................................................10
37(c)(1)(c) ...............................................................................................10, 12

## I.  INTRODUCTION

In their Consolidated Complaint, Plaintiffs made laboratory analyses of Lands' End's products the crux of their claims.  As a result, Plaintiffs were required to disclose such analyses in their initial disclosures.  When Plaintiffs failed to do so, Lands' End took affirmative steps to obtain any analyses, seeking them in requests for production that referenced the paragraph in the Consolidated Complaint that asserted such analyses existed.  Plaintiffs responded that they had no such analyses.

That was untrue.  As Plaintiffs must now admit, they have had purported laboratory analyses—many since before filing suit—and intend to use them in this case.  Rather than timely disclosing or producing the documents as the Federal Rules of Civil Procedure and this Court's Scheduling Order require, however, Plaintiffs did not disclose any laboratory analyses until they filed four of them as exhibits to the first version of their Motion for Class Certification.  Plaintiffs hoped, apparently, to prevent Lands' End from conducting any discovery on the purported analyses.  But the Federal Rules of Civil Procedure do not permit such sharp dealing in discovery.

When Lands' End pointed out the unfair discovery practices, Plaintiffs tried to blame Lands' End, made oblique references to consulting experts, and falsely asserted that they had only just decided to rely on the documents.  Eventually, however, Plaintiffs removed from their Second Motion for Class Certification all but one analysis, asserting (incorrectly) that their expert had disclosed that document in his report, making it permissible for use.  *See* Dkt. No. 61, Ex. L. Although Plaintiffs nominally agreed to withdraw three other laboratory analyses, they signaled that this consolation was only superficial when they threatened, in a footnote, to introduce those documents if Lands' End challenged the sufficiency of the evidence supposedly supporting class certification.  *See* Dkt. No. 60 at n.7 ("[T]he Plaintiffs reserves [sic] the right to introduce three

1

additional lab results that also examined the Uniforms at issue.  Each of these lab results were provided to the Defendants on September 30, 2020.").

Plaintiffs' misconduct should not pass without consequences.  Under the Rules, the Court should:

- exclude from the case the four unproduced laboratory analyses (*i.e.,* the document referenced in Plaintiffs' Second Motion for Class Certification, Dkt. No. 60, Ex. K and the three documents previously submitted as Dkt No. 56, Exs. J-L), and strike any reference to those documents in Plaintiffs' class certification briefing;

- strike the expert report of Dr. Peter Hauser from the class certification briefing Dkt. No. 60, Ex. L, due to his apparent reliance on the previously unproduced documents; and

- enter an order compelling Plaintiffs to disclose within 14 days all laboratory analyses, and documents related thereto, in their possession, custody, or control.

Such a ruling would appropriately censure Plaintiffs for their prior discovery abuses and ensure that Lands' End has the benefit of all documents that should have been produced in this case.  At a minimum, the Court should grant Lands' End more time to conduct discovery related to the laboratory analyses before opposing Plaintiffs' Second Motion for Class Certification and permit Lands' End to disclose an expert for class certification.

## II.    PROCEDURAL BACKGROUND

On December 31, 2019, Plaintiff Stephanie Andrews filed a complaint in a now-consolidated case.[1]  Plaintiffs stated in that complaint that "Plaintiffs have conducted their own preliminary investigative testing of samples of the Uniforms."  *See Andrews, et al. v. Lands' End, Inc.*, Dkt. No. 1, No. 3:19-CV-01066-jdp at ¶ 49.  Plaintiffs echoed those statements in the

---

[1] The first complaint related to Lands' End's new Delta uniforms was filed in the Southern District of New York on May 22, 2019, but there were no allegations regarding laboratory testing of Lands' End products.  *See DeCrescentis, et al. v. Lands' End, Inc.*, Dkt No. 1, No. 19-CV-04714 (S.D.N.Y. May 22, 2019).  Plaintiffs Gwyneth Gilbert and Michael Marte filed the first complaint in this District on October 3, 2019.  *See* Dkt. No. 1.  That complaint, too, did not reference any laboratory testing of Lands' End's products.

Complaint filed on May 20, 2020 in this matter after this Court ordered the cases consolidated. *See* Dkt. No. 48 at ¶ 58.

Lands' End took notice of the Andrews' complaint's reference to laboratory testing, and the equivalent allegation in Plaintiffs' operative Complaint.  *See id.*  As a result, Lands' End expected to receive that laboratory testing in Plaintiffs' initial disclosures.  Plaintiffs initial disclosures did not identify any specific laboratories that had performed testing on the uniform, any specific laboratory analyses, or any other details about "their own preliminary investigative testing" mentioned in their Complaint.  Some Plaintiffs' initial disclosures listed "Lab reports relating to the Plaintiffs [sic] injuries" and "Lab reports relating to the uniforms."  But even those Plaintiffs did not produce any documents in connection with their initial disclosures, nor did they identify any laboratory by name, or laboratory test result by date, type, or any other descriptor that provides insight into the documents Plaintiffs would rely upon.  *See* Declaration of U. Gwyn Williams ("Williams Decl."), Ex. A.  Plaintiffs did state that "Upon request from Defendants, and the establishment of a protective order and an ESI protocol, Plaintiffs/Class Representatives will produce documents and other evidentiary material now in their possession to support their claims and defenses."  *See id.*

After not receiving the testing results mentioned in Plaintiffs' Consolidated Complaint through Plaintiffs' initial disclosures, Lands' End served a request for production of documents, pursuant to Federal Rule of Civil Procedure 34, seeking "All documents related to any testing that You have conducted on the Uniform or that has been conducted on Your behalf, including but not

limited to the 'preliminary testing' described in ¶ 58 of the Complaint."[2] *See* Williams Decl., Ex. B. In their responses to this request, Plaintiffs objected only on the ground that the request was overly broad and unduly burdensome. *See* Williams Decl., Ex. C. Every Plaintiff stated that he or she did not have any such documents in his or her possession, custody, or control. *See id.*[3]

Lands' End again anticipated potentially receiving laboratory-testing results on Plaintiffs' deadline for class certification expert reports, August 18, 2020. But Plaintiffs disclosed only one expert, Dr. Peter Hauser, on issues related to crocking. Dr. Hauser's report does not describe or expressly reference any outside testing results or even provide the names of any testing laboratories. Dkt No. 60, Ex. L. Now, Plaintiffs' counsel asserts that the report's vague reference in the list of Dr. Hauser's reliance materials to "AFA labs" disclosed the existence of testing results that Plaintiffs had refused to produce in response to discovery requests. *See* Williams Decl., Ex. E.[4] But it is impossible to match Dr. Hauser's report's reliance list with any of the laboratory analyses that Plaintiffs just disclosed. "AFA labs" is not the name of the purported laboratory that

---

[2] Lands' End defined "You" and "Your" in its Requests for Production of Documents as "each named Plaintiff in both of the above-captioned matters (Gilbert, et al. v. Lands' End Inc., Civil Action No. 3:19-cv-00823-jdp and Andrews, et al. v. Lands' End, Inc., Civil Action No. 3:19-cv-01066-jdp) and any of their agents, representatives, consultants, attorneys, or any other person acting on their behalf with respect to the conduct underlying the allegations in the Complaint." *See* Williams Decl., Ex. B.

[3] Three Plaintiffs (who originally filed the *Gilbert* action), stated, "[Plaintiff] has not withheld any documents based on these objections. [Plaintiff] has no access to any such documents and did not have [her] Uniform tested." *See* Williams Decl., Ex. C. A fourth Plaintiff, Monica DeCrescentis, who originally filed a separate action in the United States District Court for the Southern District of New York, stated, "DeCrescentis refers Lands' End to the documents produced herewith [which only included testing that Lands' End had conducted on the uniforms and produced in discovery in the New York action] as well as the off-gassing report related to the dress I provided for testing which Lands' End produced in discovery in the action that was pending in the Southern District of New York." *See* Williams Decl., Ex. C.

[4] "AFA" apparently refers to the Association of Flight Attendants-CWA ("AFA"), a flight attendant union that has no relationship to any of the parties to this litigation. The AFA published a four-page document earlier this year, which Plaintiffs produced, purporting to summarize alleged testing on the uniforms. But that document mentions only that "In February 2020, AFA sent a selection of these fabrics to three labs. In March 2020, we sent additional fabrics to two labs." *See* Dkt. 56, Ex. X. The document does not say to which labs AFA sent uniform pieces for testing and reports the results of that testing only in a very general fashion.

prepared any of the four laboratory testing analyses.  Furthermore, an AFA summary of purported laboratory testing results, relied upon in Plaintiffs' initial Motion for Class Certification, does not disclose the name of any laboratory, so Lands' End has no way of knowing what testing the AFA summary refers to.  Even after reviewing the laboratory analysis that Plaintiffs now claim was referenced in the AFA summary, it is impossible to tell whether Plaintiffs' asserted connection between the AFA summary and the unproduced exhibit is accurate.

Lands' End was therefore surprised when Plaintiffs included four previously unproduced laboratory analyses as exhibits in support of their initial Motion for Class Certification.  *See* Dkt. No. 56, Exs. J-L, N.  In hopes of avoiding a dispute, and in compliance with the Court's Scheduling Order, *see* Jan. 15, 2020 Scheduling Order ("Scheduling Order"), ¶ 8, Lands' End asked Plaintiffs to remedy their discovery misconduct, demanding that Plaintiffs not rely on those documents in their Second Motion for Class Certification.  *See* Williams Decl., Ex. D.  But Plaintiffs would not agree to exclude all of the unproduced documents from their Second Motion for Class Certification.  *See* Williams Decl., Ex. E.  Instead, Plaintiffs' counsel—without basis—blamed Lands' End, and—incorrectly—stated that Plaintiffs had objected to Lands' End's document request.  Plaintiffs' counsel also erroneously suggested that Plaintiffs did not have to produce the laboratory analyses due to the protection from discovery of experts retained only for trial preparation. *See id.* But Plaintiffs' objections to Lands' End's discovery requests said no such thing.  *See* Williams Decl., Ex. C.  Nor is there a colorable claim that the documents are protected materials of a non-existent consulting expert.  Indeed, three of the four analyses are addressed to Plaintiffs' counsel.  *See* Dkt. No. 56, Exs. J-L.

Plaintiffs filed as an exhibit to their Second Motion for Class Certification a purported analysis from Hohenstein Textile Testing Institute, dated March 4, 2020.  *See* Dkt. No. 61, Ex. K

("unproduced exhibit") (and together with Dkt. No. 56 Exs. J-L "unproduced laboratory analyses"). Although Plaintiffs did not include the three other laboratory analyses as exhibits to their Second Motion for Class Certification, they referenced them in their motion papers and reserved the right to introduce them in reply, thus using those undisclosed analyses in the exact same way they would have had they been exhibits—to preclude Lands' End's ability to challenge the sufficiency of the evidence.

For those keeping score at home, Plaintiffs did not disclose the unproduced laboratory analyses until more than nine months after they first referenced them in a pleading, *see* Williams Decl., Ex. F, four months after Plaintiffs' last initial disclosures in this case, *see id.*, Ex. A, and nearly three months after disavowing the existence of these documents or similar ones in response to Lands' End's specific written discovery request for the same, *see id.*, Ex. C. Plaintiffs never supplemented their initial disclosures or responses to Lands' End's requests for production on this topic. *See* Williams Decl. ¶ 8. And Dr. Hauser's report does not discuss or reference the unproduced laboratory analyses—not even in his "list[] of all the materials" he reviewed in this matter. *See* Dkt. No. 60, Ex. L.

## III.    ARGUMENT

### A.    The Court Should Exclude the Unproduced Laboratory Analyses

Plaintiffs' conduct violates Federal Rules of Civil Procedure 26 and 34, and this Court's Order. *See* Scheduling Order, ¶ 8 ("all discovery must conform with the requirements of Rules 26 through 37"). Federal Rule of Civil Procedure 26 requires Plaintiffs to disclose "all documents" they "may use to support [their] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Plaintiffs cannot claim that they only recently decided to use the unproduced laboratory analyses. Plaintiffs referenced laboratory analyses in their Complaint, undermining any argument that the unproduced

6

laboratory analyses only recently became part of their litigation strategy.  *See* Dkt. No. 48, ¶ 58. What's more, the unproduced laboratory analyses predate Plaintiffs' discovery responses.  And, for some Plaintiffs, the unproduced laboratory analyses were in Plaintiffs' counsels' hands *before* Plaintiffs served initial disclosures.  In further violation of the Rules, Plaintiffs never supplemented their initial disclosures or discovery responses to include the unproduced laboratory analyses.  *See* Fed. R. Civ. P. 26(e)(1).

Beyond Plaintiffs' disclosure obligations under Federal Rule of Civil Procedure 26, Lands' End sought discovery of the unproduced laboratory analyses under Federal Rule of Civil Procedure 34.  Long after their attorneys had the documents, Plaintiffs denied they existed.  *See* Williams Decl., Ex. C (Plaintiffs' Responses to Lands' End's Requests for Production).  Should they try, Plaintiffs cannot excuse their misconduct by arguing that the unproduced laboratory analyses were not in their "custody or control."  Even if Plaintiffs did not personally possess the unproduced laboratory analyses, their attorneys did.  When Plaintiffs' attorneys have documents, Plaintiffs possess them for purposes of Federal Rule of Civil Procedure 34.  *See Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 506 (N.D. Ill. 2009) (quoting *Engel v. Town of Roseland*, No. 06-cv-430, 2007 WL 2903196, at *4 (N.D. Ind. Oct. 1, 2007)).

Now, caught withholding discoverable documents, Plaintiffs' counsel asserts three excuses that he claims justify Plaintiffs' lack of disclosure: Plaintiffs timely objected to Lands' End's discovery request, the undisclosed laboratory analyses were properly withheld as work product from a consulting expert, and the failure to disclose was harmless because the laboratory analyses were referenced in other documents, so Lands' End should have known of their existence.  Each of these excuses are insufficient (and, indeed, untrue).  *See* Williams Decl., Ex. E (October 6, 2020 Email from B. Maxwell raising excuses for Plaintiffs' failure to disclose).

7

Plaintiffs' first proffered excuse for not disclosing the laboratory analyses, that Plaintiffs timely objected to Lands' End's discovery request, is problematic for a number of reasons. Foremost among them is that it ignores the fact that Lands' End should never have had to issue a discovery request for the laboratory analyses in the first place—Plaintiffs had to disclose them without awaiting discovery requests pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii).  But even if there was some excuse for failing to disclose the laboratory analyses under Fed. R. Civ. P. 26 (and there is not), Plaintiffs' first excuse is also problematic because it is demonstrably false.  While Plaintiffs did object to Lands' End's discovery request on the grounds that the request was overly broad and unduly burdensome, Plaintiffs went on to state that they had no responsive documents in their possession.[5]  If Plaintiffs were withholding otherwise responsive documents on the basis of their objections, it was false and misleading for Plaintiffs to affirmatively state that they possessed no responsive documents.

Plaintiffs' second excuse, that the laboratory analyses were properly withheld as work product of a consulting expert, is belied by the express reference to such analyses in the Consolidated Complaint.  *See* Dkt 48 ¶ 58.  Further, the Rules do not permit a party to cherry pick the documents it wants to use and save them for trial under the guise of a purported consulting expert.  If Plaintiffs concealed favorable laboratory analyses until they saw fit to use them for their advantage, Lands' End has no way of knowing whether Plaintiffs are still concealing unfavorable testing results.  To avoid any further improper withholding, the Court should order Plaintiffs to disclose within 14 days all laboratory analyses, and documents related thereto, in their possession, custody, or control, and any related documents.

---

[5] Nor could an objection on the basis of the request being overly broad and unduly burdensome possibly be an appropriate objection, given that the request simply sought what Plaintiffs had themselves alleged in their Complaint.

Plaintiffs' third and final excuse, that their failure to disclose was somehow harmless because those documents were referenced in other documents that *were* disclosed, suffers from the same problems as their first excuse—it ignores the rules of discovery and is false. The laboratory analyses were only referenced in documents in the broadest possible terms. When Lands' End specifically sought that information in discovery requests, Plaintiffs responded that they did not possess any such documents. As explained above, Plaintiffs' expert disclosure did not provide any information from which Lands' End could confirm the existence of any laboratory analyses, let alone review them or take relevant discovery. And, as with Plaintiffs' first excuse, the final rationale does not actually explain why Plaintiffs ignored Federal Rule of Civil Procedure 26.

This Court should sanction Plaintiffs for their bald attempt to hide the unproduced laboratory analyses until the last possible moment, conduct that contravenes both the letter and the spirit of the Rules and this Court's Order. Plaintiffs' failure to disclose the unproduced laboratory analyses in discovery undermines the fundamental fairness of this proceeding. *See Morris v. BNSF Ry. Co.*, 969 F.3d 753, 765 (7th Cir. 2020) (rules of discovery ensure proceedings are not "carried on in the dark") (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Federal Rules of Civil Procedure 26 and 37 give this Court power to sanction Plaintiffs' discovery misconduct. *See* Fed. R. Civ. P. 26(g)(3), 37(c)(1). When, as here, a party fails to disclose the information required under Federal Rule of Civil Procedure 26, it "is not allowed to use that information . . . to supply evidence on a motion[.]" Fed. R. Civ. P. 37(c)(1). The exclusion of the unproduced laboratory analyses is "automatic and mandatory[.]" *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)). Plaintiffs may only avoid the sanction if they meet their burden to establish that their failure to disclose was substantially justified or harmless.

9

*Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (listing factors considered in harmlessness analysis). Plaintiffs have no factual bases to assert either justification or harmlessness, and vague assertions of the same cannot prevent exclusion. *See Morris*, 969 F.3d at 766 ("Parties who do not attend diligently to their obligation to supplement initial disclosures proceed at their own peril. Banking on principles of harmless error to excuse negligence is risky business.").

Lands' End is not seeking an extraordinary remedy; it is seeking the sanction the Rules require.[6]  The Court is well within its discretion to prohibit Plaintiffs from using the unproduced laboratory analyses in the case.  *See* Fed. R. Civ. P. 37(c)(1)(c) (permitting imposition of "other appropriate sanctions" including those set forth at Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)).  Courts in this District routinely enforce the exclusion sanction when a party violates its obligations.  *See Zirk v. Nationstar Mortgage*, No. 16-cv-448-jdp, 2017 WL 3402970, at *4 (W.D. Wis. Aug. 8, 2017) (barring plaintiff from relying on unproduced "notice and statements"); *Bluestein v. Central Wisconsin Anesthesiology, S.C.*, 296 F.R.D. 597, 602 (W.D. Wis. 2013) ("[plaintiff] may not rely on any documents other than those she has already turned over to defendant").

B.     The Court Should Exclude Plaintiffs' Expert Report at the Class Certification Stage

In failing to disclose the laboratory analyses, Plaintiffs also violated Federal Rule of Civil Procedure 26's edicts for expert disclosures.  *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring disclosure of "the facts or data considered by the witness in forming" his opinions).  Plaintiffs' expert report does not reference the unproduced exhibit by name or description.  *See* Dkt. 60, Ex. L.  As a result, the missing information "thwarted [Lands' End's] ability to prepare effectively

---

[6] In the interest of seeking relief as soon as possible, Lands' End has not briefed its entitlement to attorney's fees and costs incurred in preparing this motion.  *See* Fed. R. Civ. P. 37(c)(1)(A).  Lands' End reserves its right to do so.

to rebut, cross-examine, or offer a competing expert." *Lor v. Kelley*, 436 F. App'x 634, 638 (7th Cir. 2011).[7]   Indeed, the deadline for Lands' End to present class certification experts already passed, long before Plaintiffs disclosed the unproduced exhibit.   The Court set a schedule that required Defendants to disclose any rebuttal expert *before* Plaintiffs filed for class certification. Had Lands' End known then what it now knows about Plaintiffs' laboratory testing documents, it may have disclosed an expert for class certification.   But the deadline for Lands' End to disclose an expert passed without any disclosure of the unproduced laboratory analyses.   Now Lands' End has no chance to offer an expert response to the documents Plaintiffs' expert purportedly relied on.   When an expert report violates Federal Rule of Civil Procedure 26(a)(2)(B), the consequence is exclusion of the expert's testimony, unless the deficiencies were harmless or substantially justified.   *See Meyers v. National R.R. Passenger Corp.*, 618 F.3d 729, 734 (7th Cir. 2010) (citing Fed. R. Civ. P. 37(c)(1)).   The Court should exclude Plaintiffs' expert from class certification proceedings or permit Lands' End additional time to disclose its own expert.

C.      In the Alternative, the Court Should Grant Lands' Ends More Time to Oppose Plaintiffs' Motion for Class Certification

Even if this Court is not inclined to enforce the sanctions prescribed by Federal Rule of Civil Procedure 37, to punish Plaintiffs' discovery misconduct, the Court should extend Lands' End's deadline to oppose Plaintiffs' Second Motion for Class Certification so that it may conduct discovery on the entities that prepared the unproduced laboratory analyses and potentially disclose

---

[7] Lands' End does not, at this juncture, seek to exclude Dr. Hauser from the case entirely; should Plaintiffs submit a new report from him at the merits stage, Lands' End will assess then whether his prior reliance on the unproduced laboratory analyses (or any further violation of Rule 26 disclosure requirements) warrants complete exclusion.

an expert for class certification.  Thus, as an alternative remedy to exclusion, Lands' End requests 60 more days to reply to Plaintiffs' Second Motion for Class Certification.[8]

A 60-day extension is warranted because Lands' End must first issue a third-party subpoena to each of the purported laboratories that prepared the unproduced laboratory analyses and wait 30 days for responses.  After receiving responses, Lands' End needs 30 days to evaluate their sufficiency, determine whether depositions are necessary, and potentially work with its own experts on the purported analyses.  A 60-day extension of the time for Lands' End to oppose Plaintiffs' Second Motion for Class Certification fits with the Court's "wide latitude in fashioning appropriate sanctions." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) (quoting *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999)); *see also* Fed. R. Civ. P. 37(c)(1)(C).  Here, to avoid prejudice, if the Court does not exclude the unproduced laboratory analyses and Plaintiffs' expert, Lands' End should receive 60 more days to conduct discovery before opposing Plaintiffs' Second Motion for Class Certification and the opportunity to submit its own expert for class certification.

## IV.    CONCLUSION

For these reasons, Lands' End requests that the Court enter an Order prohibiting Plaintiffs from relying on the unproduced laboratory analyses in the case, exclude Plaintiffs' expert from the class certification proceedings, and order Plaintiffs to produce within 14 days all laboratory analyses, and documents related thereto, in their possession, custody, or control.  In the alternative, Lands' End requests that the Court extend its deadline to oppose Plaintiffs' Second Motion for

---

[8] Lands' End would prefer to adhere to the Court's schedule and bring this matter to trial as expeditiously as possible. Efficiency is another reason that the Court should enforce the exclusion sanction under Rule 37.

Class Certification by 60 days so that it may conduct discovery on the entities that prepared the unproduced laboratory analyses.

Dated: October 13, 2020

Respectfully submitted,

LATHAM & WATKINS LLP

By:     s/ U. Gwyn Williams
         U. Gwyn Williams (*pro hac vice*)
         Samuel A. Townsend (*pro hac vice*)
         Avery E. Borreliz (*pro hac vice*)
         200 Clarendon Street
         Boston, Massachusetts 02116
         Telephone: 617.948.6000
         Facsimile: 617.948.6001
         gwyn.williams@lw.com
         samuel.townsend@lw.com
         avery.borreliz@lw.com

         *Attorneys for Defendant*
         *Lands' End, Inc.*