IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GWYNETH GILBERT, MICHAEL MARTE,
MONICA DESCRESCENTIS, RACHEL ABUKHDEIR,
and STEPHANIE ANDREWS, on behalf of themselves
and the putative class,

                              Plaintiffs,

      v.

LANDS' END, INC.,

                              Defendant.

OPINION and ORDER

19-cv-823-jdp
19-cv-1066-jdp

---

Plaintiffs are current and former employees of Delta Air Lines, Inc. who wore uniforms manufactured by defendant Lands' End, Inc. Plaintiffs say that the uniforms were defective because they transferred dye onto clothing and other property, and because they caused health problems, including skin rashes, hair loss, and headaches.

Several motions are before the court. Plaintiffs have moved to certify classes under Federal Rule of Civil Procedure 23 for two of their claims: (1) breach of an express warranty guaranteeing 100% satisfaction with the uniforms; and (2) breach of an express warranty guaranteeing that the uniforms would be free of defects in material and workmanship. Plaintiffs also have moved for partial summary judgment on the same two warranty claims. Lands' End has filed a motion for discovery sanctions and a cross-motion for partial summary judgment on the 100% satisfaction guarantee claim.

Plaintiffs' motions will be denied because they have not shown that class certification would be appropriate or that they are entitled to summary judgment on their warranty claims. Lands' End's motion for partial summary judgment will be granted, but its motion for sanctions will be denied.

## UNDISPUTED FACTS

The parties relied on the same evidence to support their positions on class certification and summary judgment. Based on that evidence, the court finds the following facts to be undisputed, except where noted, for purposes of considering both class certification and summary judgment.

In 2016, Lands' End contracted with Delta to manufacture uniforms for Delta employees. Dkt. 60-1. In the Uniform Apparel Agreement (UAA) between Lands' End and Delta, Lands' End warranted that the Delta uniform would:

> (1)   Conform to the Sealed Samples, general specifications, and meet the wear life expectancies for each Product as specified. . . .;
>
> (2)   Meet all applicable regulatory requirements;
>
> (3)   Be suitable for its intended use before the public; and
>
> (4)   Be free of defects in material and workmanship.

*Id.* § 8.A. The agreement also required that the garments meet a minimum of a "good" rating on independent lab tests, including for: wet/dry crocking (color transfer from the garment onto something else); colorfastness to cleaning; abrasion; laundry performance; pilling; and resilience of fabric. *Id.* § 9.A.3. The general specifications required that the uniforms "be colorfast and uniformly dyed and preshrunk within industry uniform tolerances (meet or exceed American Society for Testing and Materials (ASTM) and American Association of Textile Chemist and Colorists (AATCC) standards)." *Id.* at 49, Exh. G.

Lands' End manufactured nearly 100 different garments as part of the Delta uniform, including dresses, skirts, shirts, blouses, sweaters, jackets, and pants. Various chemical additives and finishes were used during the manufacturing process to make the garments stretchy,

wrinkle- and stain-resistant, waterproof, anti-static, and deodorizing. Different chemical treatments were applied to different garments comprising the Delta uniform.

Delta officially launched the uniforms on May 29, 2018. Before the uniform launch, Delta gave each employee a set of uniform pieces free of charge. Delta also gave each employee allotment credits that they could use to purchase additional uniform items. If Delta employees wanted even more items, employees could purchase garments from Lands' End with their own money.

Since the Delta uniform launch in May 2018, the uniforms have been worn by approximately 64,000 Delta employees. The vast majority of employees who wore the uniforms have not complained to Lands' End about problems with the uniforms. But between June 2018 and July 2019, Lands' End received 2,470 complaints from Delta employees about the uniforms. Lands' End divided the complaints into the following categories: skin irritation (1,192); allergies (419); and crocking (358). Lands' End also received complaints that did not fall into these categories, including complaints about hair loss and headaches.

The UAA permitted Delta employees to return uniform pieces that were unsatisfactory. The "remedy" section of the UAA stated:

> [I]f at any time, for any reason, Delta, in the ordinary course of business, or any actively employed Employee is not 100% satisfied with their Products (even if they have been washed, worn and/or embroidered), they can return them at any time during the Term or for eighteen (18) months after the Term . . . for a refund or exchange as set forth below. Seller will not charge a restocking fee. All returns and exchanges will be accompanied by a return/exchange form, as mutually agreed to by the parties. . . For Delta purchases with an Allotment, the Employee may elect whether to receive an exchange or Allotment credit; if the Employee chooses an Allotment credit, Seller shall refund Delta for the amount paid by Delta for that Allotment amount. For Employee purchases where his or her personal credit card was used, the Employee may elect whether to receive an exchange or

3

> refund. Seller shall process returns for exchange or credit within
> four (4) business days of receipt.

*Id.* § 8.B.

Several Delta employees used the return process outlined in the UAA and returned garments to Lands' End for exchanges or refunds. Lands' End also reimbursed several Delta employees for personal property that was damaged by crocking. (Plaintiffs assert that Lands' End reimbursed only one instance of property damage per employee, but plaintiffs produce no admissible evidence to support their assertion.) In November 2019, Delta changed its policy to permit employees to wear black and white clothing, under certain circumstances, instead of the Lands' End garments. Approximately half of Delta's flight attendants now wear black and white clothing.

On September 25, 2020, after this lawsuit was filed, plaintiffs' counsel sent a letter to Lands' End regarding the Delta uniform, stating in full:

> Counsel for Plaintiffs in the Consolidated Action hereby make a demand upon Lands' End for a full refund on behalf of all Plaintiffs pursuant to Paragraph 8B of the Uniform Apparel Agreement.

Lands' End responded on October 8, 2020, stating that the UAA did not entitle plaintiffs to demand a refund without following the UAA's specific procedures for initiating and completing a return. Lands' End also stated that not all plaintiffs were entitled to a refund because some had returned their items and received a refund already, some were no longer actively employed with Delta, and some did not pay for their Delta uniform in the first place. Plaintiffs did not respond to Lands' End's letter.

ANALYSIS

**A. Motion for sanctions**

Lands' End accuses plaintiffs of withholding laboratory results from October 2020 despite Lands' End's discovery requests for such results. Lands' End asks the court to: (1) prohibit plaintiffs from relying on the undisclosed laboratory results; (2) strike all portions of any pleading or expert report relying on the documents; (3) require that, within 14 days and on an ongoing basis thereafter, plaintiffs disclose any other lab results in their custody or control; and (4) award Lands' End its expenses and fees associated with both motions for sanctions. Plaintiffs concede that they should have identified the lab results on a privilege log, but state that they provided the lab results to Lands' End shortly after deciding to provide them to their testifying expert.

Lands' End motion will be denied. Plaintiffs' explanation for their failure to timely disclose the lab results is not particularly persuasive, but the additional reports are only a modest supplementation to their expert disclosure. In addition, Lands' End had a significant amount of time to review the reports before its own expert disclosures were due. So the court is not persuaded that Lands' End would be prejudiced unfairly by the supplement.

**B. Class certification and partial summary judgment**

Plaintiffs have moved for class certification and partial summary judgment on two of their breach of warranty claims. First, plaintiffs contend that Lands' End breached § 8.B of the UAA, which expressly warrants that Delta employees can return or exchange their uniforms for any reason if they are not 100% satisfied with them. Second, plaintiffs contend that Lands' End breached an express warranty in the UAA §§ 8.A.2, 3 and 4; §§ 9.A.3 and 4; and Exhibit

G (general specifications), that the unform pieces would be colorfast and defect free.[1] Plaintiffs argue that class treatment would be the most efficient way to resolve these claims, and that there are no material factual disputes that prevent summary judgment in their favor. Lands' End responds that class treatment would be improper because there are too many individualized questions of law and fact. In addition, Lands' End argues that it is entitled to summary judgment on plaintiffs' breach of the 100% satisfaction warranty claim.

The parties agree that Delaware law applies to plaintiffs' express warranty claims. To succeed on a breach of express warranty claim under Delaware Law, plaintiffs must prove that: (1) a warranty existed; (2) Lands' End breached the warranty; and (3) plaintiffs incurred damages as a result. *Staging Dimensions, Inc. v. KP Walsh Assocs., Inc.*, No. CPU4-19-001377, 2020 WL 1428120, at *5 (Del. Com. Pl. Mar. 19, 2020); 6 Del. C. § 2-313(1). Plaintiffs must also prove compliance with any conditions precedent that Lands' End has imposed with respect to the warranty. *Id.*

### 1. 100% guarantee claim

Plaintiffs seek certification of a nationwide class of Delta employees who were not 100% satisfied with the uniforms provided by Lands' End. Both sides seek summary judgment on this breach of warranty claim.

---

[1] In their brief in support of class certification, plaintiffs also argued that Lands' End breached an implied warranty by providing uniforms that crocked. After Lands' End argued that the implied warranty claim would require review of multiple state laws, plaintiffs clarified that what they had "termed an implied warranty is actually identical to the warranty expressed in the UAA." Plts.' Reply Br., Dkt. 94, at 16. Because plaintiffs do not appear to be pursuing any implied warranty claim that is distinct from their express warranty claims, the court will not separately address the parties' arguments regarding implied warranties.

In most cases, courts should decide motions for class certification before ruling on summary judgment. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016). But courts may consider a dispositive motion before deciding class certification when doing so would be more efficient. *Id.* at n.3. *See also Cowen v. Bank United of Texas*, FSB, 70 F.3d 937, 941 (7th Cir. 1995) (explaining that it was appropriate for court to consider defendant's summary judgment motion before deciding class certification); Fed. R. Civ. P. 23(c)(1) advisory committee's notes to 2003 amendment ("The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified."). In this instance, it is more efficient to consider the parties' cross-motions for summary judgment on plaintiffs' 100% guarantee claim because, as discussed below, Lands' End has shown that it is entitled to summary judgment on this claim.

Plaintiffs' argument in support of summary judgment on this claim is simple. Plaintiffs state that because they joined this lawsuit, they were necessarily unsatisfied with the uniforms provided by Lands' End. And because they were unsatisfied, Lands' End has breached the express warranty provision in § 8.B of the UAA by failing to provide them with refunds.

But plaintiffs' argument ignores the plain language of the express warranty provision in § 8.B. And under Delaware law, the text of the express warranty controls. *See In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56–57 (Del. 2019) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions."). The UAA states that an unsatisfied, active Delta employee can obtain a refund or exchange from Lands' End by returning the uniform piece to Lands' End with a return or exchange form. Lands' End would then process the return within four business days, providing the employee either a monetary refund or allotment credit, depending on how the uniform

item was purchased. So to succeed on a breach of warranty claim under § 8.B, plaintiffs would need to show that they were active Delta employees who returned their uniform pieces with the proper form, but Lands' End refused to provide them a refund or exchange.

Plaintiffs do not even allege that they tried to return their uniforms, let alone submit evidence showing that Lands' End refused to provide them a refund. In contrast, Lands' End has submitted unrefuted evidence showing that it never denied a refund or exchange to any named plaintiff who asked for one according to the procedures in the UAA. Lands' End also has submitted unrefuted evidence showing that Delta employees who returned garments to Lands' End found the process to be relatively simple and were able to exchange or receive refunds for their uniform pieces. Because plaintiffs have submitted *no* evidence showing that that any Delta employee returned a uniform piece according to the UAA return procedures but was denied a refund by Lands' End, Lands' End is entitled to summary judgment on this claim. *See Burton v. Chrysler Grp. LLC*, No. CV 12-5-LPS, 2014 WL 4253135, at *5 (D. Del. Aug. 27, 2014) (plaintiff's claim for breach of warranty to repair or replace defective parts failed where no plaintiff alleged that he "has sought the promised repair or replacement and not received it, or has received it but been charged, or has sought reimbursement for an earlier repair or replacement and been denied").

Plaintiffs make several arguments in attempt to save their claim, but none is persuasive. Plaintiffs point to the blanket demand letter sent to Lands' End by counsel, after this lawsuit was filed, in which counsel demanded a refund on behalf of all plaintiffs. Plaintiffs argue that Lands' End's refusal to provide refunds in response to the demand letter establishes a breach of the § 8.B warranty. But this argument again ignores the express language of the contract. The UAA includes specific procedures for how Delta employees can request and receive a

refund or exchange for their uniforms. A blanket demand letter from counsel does not comply with those procedures, so Lands' End did not breach the UAA by refusing to provide refunds in response to counsel's demand.

Plaintiffs also argue that they should not have to return their uniforms to receive a refund. Plaintiffs point to an email that Lands' End sent to Delta on March 15, 2019, that included "talking points" for Delta management to share with Delta employees. Dkt. 80-5. The email provided instructions for how Delta employees could easily exchange garments for different uniform pieces. But this email did not say that employees did not have to return garments to obtain refunds. It says nothing about refunds at all. Plaintiffs' argument is again contrary to the express terms of the UAA, which states that employees can receive a refund or exchange only after returning their uniform items with a return or exchange form.

Finally, plaintiffs suggest that the court could grant "conditional summary judgment," and require plaintiffs to return their uniforms to Lands' End before receiving a refund. Plaintiffs cite no legal authority that would permit a court to condition summary judgment on the parties performing specific acts. And plaintiffs do not explain why they need a court order to direct Lands' End to comply with a warranty provision that they have agreed to comply with already. Dft.'s Br., Dkt. 151, at 8 ("Lands' End has repeatedly promised to honor its warranty if actively-employed Plaintiffs return their uniforms."). Plaintiffs' suggestion that the court grant "conditional summary judgment" simply confirms that they have not shown any breach of § 8.B.

For all of these reasons, Lands' End's motion for partial summary judgment will be granted, and plaintiffs' claim that Lands' End breached the express warranty in § 8.B will be dismissed. Plaintiffs' motion to certify a class on that claim will be denied as moot.

## C.  Crocking claim

Plaintiffs contend that Lands' End breached another express warranty in the UAA—that the Delta uniforms would be "free from defects in material and workmanship"—by providing uniforms that crocked and transferred dye onto clothing and other personal property. Plaintiffs seek to represent a class of Delta employees who experienced crocking, and they contend that all class members who experienced crocking are entitled to summary judgment and compensation for personal property damages. Lands' End did not move for summary judgment on this claim, and resolving plaintiffs' summary judgment motion first would not affect the outcome of class certification. So the court will address plaintiffs' motion for class certification first.

### 2.  Class certification

Plaintiffs seek to certify a nationwide class of Delta employees who have experienced the bleeding of colors and/or crocking onto their personal property from the uniforms provided by Lands' End. There are three requirements for class certification under Rule 23: (1) the class must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must satisfy the threshold requirements of numerosity, commonality, adequacy, and typicality under Rule 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b). In this case, plaintiffs seek certification under Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs also suggest that the court could certify a class under

Rule 23(c)(4) with respect to particular issues, including whether Lands' End breached a warranty by providing defective garments.

Plaintiffs' class definition meets the first requirement, as it is defined clearly using objective criteria. *See Mullins*, 795 F.3d at 660. Although Lands' End challenges plaintiffs' plan for identifying class members, those concerns are more appropriately addressed when considering the manageability of the class under Rule 23(b)(3). *Id.* at 663. Plaintiffs' proposed class also satisfies the numerosity requirement of Rules 23(a), as they submitted evidence showing that at least 358 Delta employees, including class representatives, experienced crocking from the Lands' End uniforms.

But plaintiffs have not shown that the proposed class meets the commonality requirements of Rule 23(a)(2). Under that requirement, a class action must involve "questions of law or fact common to the class." Closely related is Rule 23(b)'s requirement that common questions predominate over questions affecting individual class members. An issue of fact or law is common only if it is capable of classwide resolution. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). In other words, class certification is appropriate only if the common questions have common answers. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation omitted).

Plaintiffs state that the questions common to all class members include: whether Lands' End warranted to provide uniforms without material defects; whether Lands' End provided defective uniforms; and whether plaintiffs are entitled to recover damages due to bleeding and crocking of the uniform. The first question could be resolved on a classwide basis—the UAA clearly contains express warranties about uniform quality. But plaintiffs have not shown that the second and third questions could be resolved on a classwide basis.

11

Plaintiffs argue that the second and third questions can be resolved on a classwide basis because the court can issue a ruling stating that any uniform piece that crocked was defective, and that plaintiffs are entitled to damages. Plts.' Br., Dkt. 94, at 21 ("Quite plainly, garments that crock and bleed colors onto other garments are not suitable or free from defects."). Plaintiffs cite the opinion of their expert, Dr. Peter Hauser, who asserted that, in general, garments that transfer dye to other fabrics and objects are defective. Plts.' Br., Dkt. 61, at 26. But neither plaintiffs' nor Hauser's assertion that the uniforms were defective is sufficient to establish a breach of warranty on a classwide basis. Plaintiffs point to nothing in the UAA warranting that the garments will not crock or that any amount of crocking is a defect. With respect to crocking, the UAA states that the uniforms would meet certain testing standards relating to crocking and would be colorfast within industry tolerances. Dkt. 60-1, § 9.A.3, Exh. G. And Dr. Hauser testified that it is impossible to avoid crocking with some colors, and that some amount of crocking is acceptable within the industry. Hauser Dep., Dkt. 71, at 95–95. So plaintiffs cannot rely on their assertion of defectiveness to prove their claim on a classwide basis. And plaintiffs have not identified other evidence that would help them prove, on a classwide basis, that each class member who experienced crocking had a uniform piece that failed to meet industry tolerances and UAA testing requirements or was otherwise defective under the UAA.

At this stage, the court is not evaluating plaintiffs' evidence to determine whether plaintiffs are likely to succeed on their claims. Plaintiffs do not need to prove that they will prevail on the merits to establish that there are issues are common to the class. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). But plaintiffs must show that the requirements of Rule 23 are met, and the court must make whatever factual and legal

inquiries are necessary to determine if the requirements of Rule 23 are met, even if those inquiries overlap with the merits. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010). This requires the court to "walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell*, 800 F.3d at 377.

Plaintiffs' ability to show a defect on a classwide basis is complicated in this case because Lands' End provided nearly 100 different uniform pieces, produced by different manufacturers, to different specifications, and made with varying fabrics, dyes, and performance finishes. The various garments were worn by Delta employees in a variety of work situations, and the vast majority of them did not have crocking problems. Lands' End has also submitted evidence showing that crocking can be caused by misuse of a garment, such as by failing to follow laundering instructions.

Plaintiffs have not made a convincing argument that common issues could be resolved on a classwide basis in light of these numerous individualized differences. Plaintiffs' proposed classwide resolution does not account for what uniform piece class members wore, how the class members treated their garments, the amount of crocking class members experienced, the amount of property damage that occurred, if any, or whether the class members already received compensation from Lands' End for damaged property. In short, plaintiffs have not shown that they would prove that Lands' End provided defective garments to the proposed class members, or that class members suffered a common injury as a result of a common defect. Therefore, plaintiffs have not satisfied the commonality requirements of Rule 23(a) or the predominance requirements of (b)(3).

13

Plaintiffs also have not shown that a class action would be a superior method of litigating this case, as required under Rule 23(b)(3). Plaintiffs' plan for identifying class members presents significant challenges. Plaintiffs say that they would identify class members by reviewing employee complaints about crocking, employee lawsuits about crocking, and employee requests for reimbursement for damage to personal property from crocking. Plaintiffs also say that they would review requests from employees who now wear black and white uniforms, with the assumption that at least some of the employees stopped wearing the Lands' End uniforms because of crocking. Plaintiffs acknowledge that these methods would not cover all employees who might have experienced crocking, so plaintiffs suggest that they would send notices to all Delta employees and ask them to certify whether they experienced crocking. Although they don't say so explicitly, plaintiffs seem to be proposing that they send out notices to the approximately 64,000 Delta employees who have worn the Lands' End uniform to determine which employees experienced crocking. This proposed individualized inquiry would present a significant burden that is not justified in light of the problems with the proposed class identified above.

For all of these reasons, plaintiffs' motion to certify the crocking class under Rule 23 will be denied.

### 3.  Partial summary judgment

Plaintiffs also seek summary judgment on their breach of warranty claim for all plaintiffs who experienced crocking. Plaintiffs contend that all garments that exhibited any crocking or dye transfer are automatically defective. But as discussed above, there are genuine factual disputes about whether the uniform pieces that crocked were defective. There are factual disputes about how much crocking or color transfer is acceptable in the industry, whether

14

Lands' End uniforms met industry and UAA standards, and whether crocking was caused by factors outside Lands' End's control. In addition, there are disputed issues of fact regarding whether plaintiffs suffered compensable harm, and whether Lands' End has already compensated plaintiffs for their harm.

Because there are genuine and material factual disputes, plaintiffs' motion for partial summary judgment will be denied.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for class certification, Dkt. 55, is DENIED.

2. Defendant Lands' End's motion for sanctions, Dkt. 101, is DENIED.

3. Plaintiffs' motion for partial summary judgment, Dkt. 127, is DENIED.

4. Defendant Lands' End's motion for partial summary judgment, Dkt. 137, is GRANTED.

Entered August 18, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

15